**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JULIE ANN WOLF,

    Plaintiff,

  v.

WELLS FARGO BANK, N.A., ALSO KNOWN AS WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A., FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB, AND FORMERLY KNOWN AS WORLD SAVINGS BANK, FSB; NDEX WEST, LLC; GOLDEN SAVINGS ASSOCIATION SERVICE COMPANY; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; GUARANTEE MORTGAGE; and DOES 1 through 100, inclusive,

    Defendants.
                                                        /

No. C11-01337 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE**

**INTRODUCTION**

In this foreclosure dispute, defendants Wachovia Mortgage, Golden West Savings, and MERS move to dismiss the action pursuant to FRCP 12(b)(6) and to strike portions of the amended complaint pursuant to FRCP 12(f). For the reasons stated below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**, and the motion to strike is **GRANTED IN PART AND DENIED AS MOOT IN PART**.

**STATEMENT**

The operative complaint alleged the following. Defendants participate in the mortgage servicing business. Plaintiff Julie Ann Wolf acquired a one-third interest in the subject property in San Mateo upon the death of her father. In June 2007, plaintiff obtained a $510,000 loan at a 7.3% interest rate from World Savings Bank, FSB (now Wachovia Mortgage, a division of Wells Fargo Bank, N.A.). The loan was recorded by a promissory note and secured by a first priority deed of trust against the subject property listing Golden West Savings Association Service Company as the trustee and World Savings as the beneficiary. Defendant Mortgage Electronic Registration Systems, Inc. was the initial nominal beneficiary on the Deed of Trust. Defendant Guarantee Mortgage acted as the mortgage broker and alleged agent of World Savings in the loan transaction (First Amd. Compl. ¶¶ 2–4, 6, 9–10, 21).

World Savings changed its name to Wachovia Mortgage in late 2007. Wachovia Mortgage then became part of Wells Fargo Bank in 2009 and is the current holder of the note (*id.* at ¶¶ 5–6; RJN Exhs. B, D). In April 2010, a representative for defendant NDEX West, LLC, recorded a notice of default, which stated that plaintiff was $56,369.49 in arrears. NDEX then substituted in for Golden West as the trustee by recording a substitution of trustee in May 2010. Two months later, the trustee, NDEX, recorded a notice of trustee's sale (RJN Exhs. F, H, I).

On August 2, 2010, plaintiff filed for Chapter 7 bankruptcy, and she received a discharge in November 2010. In October 2010, plaintiff acquired her siblings' two-thirds interest in the property by an assignment of deed of trust. Wachovia Mortgage then purchased the property and recorded a trustee's deed upon sale in December 2010 (First Amd. Compl. ¶ 22; RJN Exhs. I, J).

In the operative complaint, plaintiff alleged that neither World Savings nor Guarantee provided her with full disclosure of the terms of the loan prior to her signing the loan agreement, including complete documentation of the loan, a loan origination agreement, or a written loan brokerage agreement. Furthermore, plaintiff alleged that her income and assets were never verified by defendants, and she did not qualify for the subject loan. Defendants' failure to place plaintiff into a proper loan which she understood and qualified for placed plaintiff in "dire financial straits" and in "great danger of foreclosure" (First Amd. Compl. ¶¶ 29–32).

Plaintiff further alleged that the national average for a 30-year fixed rate loan for the week ending May 18, 2007, was 6.21%, lower than the rate of 7.3% she was charged by defendants. Moreover, the APR rate disclosed to plaintiff was 7.453%, while the actual rate was 7.498%. Plaintiff also asserted that a document dated April 2010, which stated plaintiff was contacted by Wells Fargo to show Wells Fargo complied with California Civil Code Section 2923.5, was falsely documented (*id.* at ¶¶ 24–25, 28, 34).

At some point, plaintiff also applied for a loan modification because defendants allegedly encouraged her to do so. The processor of her application told her that the foreclosure "clock would stop" during the modification process, but it did not. Plaintiff asserted that the processor seemed to intentionally stall the process by losing paperwork and failing to return phone calls. Moreover, payments made by plaintiff were either misapplied or not credited to her outstanding obligation including one payment for $6,000. Plaintiff asserted these accounting inaccuracies rendered the notice of default void due to substantial error (*id.* at ¶¶ 38–39).

Plaintiff alleged that she only recently became aware of the violations by defendants in procuring her a loan. She believed that World Savings would provide her with the "best loan available to her needs." "Plaintiff had relied on the statements and actions of Defendants, placing her faith and confidence in the relationship between Plaintiff and the Defendants to lull her into a false sense of security and misdirect her from the illegal acts of Defendants as alleged . . . " (*id.* at ¶¶ 37, 41, 61).

Defendants request that judicial notice be taken of the following documents: (1) certificate of corporate existence issued by the Office of Thrift Supervision, dated April 21, 2006; (2) a letter written on the letterhead of the Office of Thrift Supervision, dated November 19, 2007; (3) a Charter of Wachovia Mortgage, dated December 31, 2007; (4) an Official Certification of the Comptroller of the Currency; (5) a deed of trust, recorded with the San Mateo County Recorder's Office on June 21, 2007, as document number 2007-095174; (6) a notice of default, recorded with the San Mateo County Recorder's Office on April 14, 2010, as document number 2010-040042; (7) a substitution of trustee recorded with the San Mateo County Recorder's Office on May 25, 2010, as document number 2010-56597; (8) a notice of trustee's

3

1  sale, recorded with the San Mateo County Recorder's Office on July 15, 2010, as document
2  number 2010-077146; (9) a trustee's deed sale, recorded with the San Mateo County Recorder's
3  Office on December 17, 2010, as document number 2010-155889; (10) a docket relating
4  to plaintiff's Chapter 7 bankruptcy filed on August 2, 2010, case number 10-32963; and
5  (11) plaintiff's Chapter 7 bankruptcy petition and schedules filed on August 2, 2010, case number
6  10-32963. Plaintiff does not object. Documents (5)–(11) are matters of public record, and
7  documents (1)–(4) were obtained from official government websites. *See Paralyzed Veterans*
8  *of Am. v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *5–6 (N.D. Cal. Sept. 9, 2008)
9  (Armstrong, J.). Judicial notice of these documents is appropriate under Federal Rule of
10 Evidence 201. Defendants' request for judicial notice is thus **GRANTED**.
11     Plaintiff commenced this action in San Mateo County Superior Court in December 2010.
12 Defendant removed the action in March 2011 (Dkt. No. 1). Plaintiff then filed an amended
13 complaint on July 26. The amended complaint alleged fourteen claims: (1) breach of fiduciary
14 duty; (2) breach of the covenant of good faith and fair dealing; (3) deceit in violation of California
15 Civil Code Sections 1709–1710; (4) violation of Business and Professions Code Section 17200;
16 (5) promissory estoppel; (6) fraud by intentional misrepresentation; (7) fraud by concealment;
17 (8) unjust enrichment; (9) quiet title; (10) violation of the California Rosenthal Act;
18 (11) declaratory relief; (12) rescission/cancellation of void instrument; (13) accounting; and
19 (14) violation of California Civil Code Section 2934a(d) and (e). Defendants Wachovia
20 Mortgage, Golden West, and MERS now move to dismiss plaintiff's claims and to strike portions
21 of the amended complaint. Defendants NDEX and Guarantee Mortgage did not join this motion.

**ANALYSIS**

    **1.**    **MOTION TO DISMISS**.

        **A.**    **Standard of Review.**

25     To survive a motion to dismiss, a complaint must contain sufficient factual matter,
26 accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct.
27 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to
28 draw a reasonable inference that defendants are liable for the misconduct alleged. While a court

4

1  "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true
2  a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Bell*
3  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and
4  unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."
5  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal is only proper if
6  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged
7  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
8  1990).[*]

9  FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud
10 must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's
11 mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what,
12 when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
13 1097, 1106 (9th Cir. 2003). FRCP 9(b) serves to give defendants notice of the specific fraudulent
14 conduct against which they must defend. *See Bly-Magee v. California*, 236 F.3d 1014, 1018
15 (9th Cir. 2001).

**B.   First Claim: Breach of Fiduciary Duty.**

17 In her first claim for breach of fiduciary duty, plaintiff alleged that defendants "created,
18 accepted and acted in a fiduciary relationship of great trust and acted for and were the processors
19 of property for the benefit of Plaintiff in that she place[d] her full trust, confidence and faith in
20 the initiating Defendants . . . due to their greater experience . . . " (First Amd. Compl. ¶ 41).
21 This claim, however, fails as a matter of law because there is not a fiduciary relationship between
22 a lender and a borrower. Moreover, the broker for this loan, Guarantee Mortgage, is not a party
23 to this motion.

24 In California, barring an assumption of duty or a special relationship, "financial
25 institutions owe no duty of care to a borrower when the institution's involvement in the loan
26 transaction does not exceed the scope of its conventional role as a mere lender of money."

---

[*] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

5

*Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991); *see also Downey v. Humphreys*, 102 Cal. App. 2d 323, 332 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such").

Defendants are lenders. Plaintiff alleged no facts to show a duty or special relationship that would impose a fiduciary duty on defendants. Because a duty does not exist, this order does not reach possible breach theories. Defendants' motion to dismiss plaintiff's claim for breach of fiduciary duty is **GRANTED**.

### C. Second Claim: Breach of the Covenant Of Good Faith and Fair Dealing.

Plaintiff claimed that defendants breached the covenant of good faith and fair dealing implicit in the loan agreement, promissory note, and deed of trust (First Amd. Compl. ¶ 49). Under California law, a claim for breach of the implied covenant under contract law is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract. This duty, however, is "a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008). To the extent that plaintiff's allegations stem from the formation and negotiation of the loan before the contract was formed, her claim is insufficient.

Plaintiff did, however, allege that outside of the contract negotiations defendants failed to credit payments she made to them, resulting in an allegedly flawed notice of default, and defendants failed to execute, prepare, and file documents, such as the notice of default, notice of trustee's sale, and the deed of trust, in compliance with California law. To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from that contract. Plaintiff alleged sufficient facts to meet this standard by asserting the existence of a contract whereby she was required to make payments to defendants. She alleged that she made payments but defendants failed to credit them to her account, resulting in a notice of default. Accordingly, defendants' motion to dismiss this claim is **DENIED**.

### D.     Third, Sixth, and Seventh Claims: Fraud-Based Claims.

Plaintiff's third claim for deceit, sixth claim for fraud by intentional misrepresentation, and seventh claim for fraud by concealment are all based in fraud. Claims based in fraud are required to be pled with specificity in accordance with FRCP 9(b). Plaintiff alleged that "Defendants made misrepresentations to Plaintiff . . . including . . . statements that Defendants would act in Plaintiff's best interest to obtain a loan which would be to Plaintiff's benefit" and "misrepresented the interest rate and monthly payment on the terms of the loan by putting it in legalese" (First Amd. Compl. ¶¶ 57–58). Defendants also disclosed a lower APR rate to plaintiff than she was charged and failed to disclose other terms of the loan prior to the loan agreement. She further asserted that when she attempted to apply for a loan modification, the loan processor seemed to intentionally stall the process and told her the foreclosure "clock would stop" when it did not (*id.* at ¶¶ 28–29, 38).

Plaintiff alleged defendants made misrepresentations to her in violation of California Civil Code Sections 1709 and 1710. Section 1709 states, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Section 1710 defines deceit in four ways:

> (1)  The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> (2) The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
>
> (3) The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,
>
> (4) A promise, made without any intention of performing it.

"The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003). These same elements also form the basis for a claim for fraud by intentional misrepresentation and fraud by concealment. Concealment

7

also requires that "the defendant must have been under a duty to disclose some fact to the plaintiff." *Hahn v. Mirda*, 147 Cal. App. 4th 740, 745, 54 (2007).

Plaintiff did not plead sufficient facts to state any plausible claim based in fraud. *First*, plaintiff alleged that defendants misrepresented that she would be put into the best loan for her that would suit her needs. As defendants contend, this statement is mere puffery that cannot form the basis of a tort claim. Puffery does not consist of factual claims on which a reasonable consumer would rely. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990). The court of appeals observed that a common theme in considering puffery is that "consumer reliance will be induced by specific rather than general assertions." *Id.* at 246.

> [A]dvertising which merely states in general terms that one product is superior is not actionable. However, misdescriptions of specific or absolute characteristics of a product are actionable. [A]n advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was ruled puffery. However, when the advertiser quantified numerically the alleged superior brightness with statements such as "35,000 candle power and 10-hour life," the court found a potential . . . claim.

*Ibid.* The assertion allegedly made by defendants that plaintiff's loan would be the best loan to suit her needs is a general assertion not intended to induce reliance and on which a reasonable consumer would not rely. Accordingly, it cannot form the basis of plaintiff's claims for fraud.

*Second*, plaintiff alleged that the APR rate disclosed to her "was 7.453% but the actual APR was 7.498%" (First Amd. Compl. ¶ 28). This alleged misrepresentation cannot form the basis of plaintiff's claims because she failed to allege knowledge of falsity or scienter on the part of defendants. She did not contend that defendants or their employees knew their statements regarding the APR rate to be untrue, rather than a reasonable mistake, or that they were made with an intent to defraud or induce reliance. Plaintiff even refers to the disclosure of the wrong APR rate as "erroneous" in her reply brief (Reply Br. 1). Plaintiff also did not identify the employee she spoke with or even which defendant was the employer of the person plaintiff spoke with. This is not enough to state a claim for fraud under FRCP 9(b).

*Third*, plaintiff contended that defendants committed fraud during the loan modification process. Plaintiff stated that she applied for a loan modification at the urging of defendants, and defendants intentionally stalled the process and made false promises. She did not, however,

8

comply with FRCP 9(b) in pleading her claim. "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. Plaintiff failed to provide a time-frame for when the alleged loan modification occurred, and has no basis on which to claim such information was not available to her. Moreover, she did not state which defendant urged her to apply for a loan modification or where or to whom she applied. She did not plead sufficient facts to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly-Magee*, 236 F.3d at 1018. Accordingly, plaintiff's loan modification allegations cannot serves as the basis for her fraud claims.

*Fourth*, plaintiff alleged that defendants misrepresented that they would provide plaintiff with a "true and accurate accounting of the fees charged and payments received." She alleged that one payment of $6,000 was never credited to her account (First Amd. Compl. ¶¶ 39, 57). This claim was not pled with the specificity required by FRCP 9(b). As discussed above, this is not enough to establish the "who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106. She did not allege any time-frame for the alleged payment that was not credited to her account nor did she state to whom the payment was made or in what form it was made. Moreover, plaintiff did not claim that the alleged misrepresentations were known by defendants to be untrue or that anything more than an accounting error occurred. Thus, plaintiff's fraud claims cannot be based on defendants' alleged accounting inaccuracies.

*Fifth*, plaintiff contended that her "income and assets were never verified by Defendants" (First Amd. Compl. ¶ 31). She did not expand on this allegation in her complaint; thus, plaintiff did not plead with the required specificity under FRCP 9(b). As discussed above, plaintiff did not identify any person or company involved in the alleged failure to verify nor did she provide any details of what exactly defendants failed to do or how they failed to do it. Plaintiff did not allege sufficient facts to state a claim for fraud based on the failure of defendants to verify her income and assets.

*Sixth*, plaintiff alleged that neither World Savings nor Guarantee provided her "with complete disclosure of the terms of the loan prior to actual signing" (First Amd. Compl. ¶ 29). Establishing a claim for fraud by concealment requires that defendant had a duty to disclose

9

those facts that were allegedly concealed. *Hahn*, 147 Cal. App. 4th at 745. Plaintiff asserted that a fiduciary duty, requiring disclosure, existed between her and defendants. As previously discussed, there is no fiduciary duty between lenders and borrowers. There is, however, a duty for lenders to disclose certain things under TILA. *See* C.F.R. 226.18–226.19. Because plaintiff did not plead with more specificity what terms of the loan were not disclosed to her, defendants' duty or not to disclose the information cannot be determined. Accordingly, plaintiff failed to plead all the required elements of her claim for fraudulent concealment and failed to put defendants on notice of her claims against them. Thus, plaintiff did not plead sufficient facts to state a plausible claim for deceit, fraud by intentional misrepresentation, or fraud by concealment.

Defendants' motion to dismiss plaintiff's third, sixth, and seventh fraud claims is therefore **GRANTED**.

### E. Fourth Claim: Violation of Business And Professions Code Section 17200.

To state a claim for unfair competition pursuant to California Business and Professions Code Section 17200, a plaintiff must allege that a defendant engaged in an "unlawful, unfair, or fraudulent business act or practice" or in "unfair, deceptive, untrue, or misleading advertising." Plaintiff alleged that defendants disclosed a lower APR rate to her than the actual APR rate and provided her a loan without a written loan brokerage agreement (First Amd. Compl. ¶¶ 28–29). Defendants allegedly further misled her into believing her home would not be foreclosed on during loan modification negotiations. Finally, plaintiff claimed she made payments of at least $6,000 to defendants that were not credited to her outstanding balance (*id.* at ¶¶ 37, 39).

"The term 'unfair . . . business act or practice' . . . mean[s] deceptive conduct that injures consumers and competitors." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 195 (1999). The complaint sufficiently alleged that defendants engaged in deceptive conduct by misleading plaintiff into believing that her home would not be foreclosed during the modification process, failing to credit payments made to her outstanding balance allegedly causing an incorrect default notice, and disclosing to her an APR rate lower than the actual APR rate. Accordingly, defendants' motion to dismiss plaintiff's fourth claim for relief is **DENIED**.

### F. Fifth Claim: Promissory Estoppel.

In her fifth claim, plaintiff alleged that she "justifiably and detrimentally relied on the false promises, representations and assurance of Defendants" when she entered into the agreement, believed defendants' assurances of a certain APR rate and accurate accounting of her payments, failed to discover defendants' alleged wrongful conduct due to their promises, and was promised that the "foreclosure clock would stop" during the loan modification process. (First Amd. Compl. ¶¶ 28, 37, 75–76). Promissory estoppel refers to "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance." RESTATEMENT (SECOND) OF CONTRACTS § 90(1).

Plaintiff accordingly stated a plausible claim for promissory estoppel by alleging that: (1) defendants promised to postpone the foreclosure sale, (2) plaintiff relied on this promise by not pursuing other action such as due diligence to discover defendants' alleged misconduct within the limitations period, (3) plaintiff's reliance was justifiable and foreseeable, and (4) plaintiff suffered a loss as a result of her detrimental reliance. Defendants attempt two main arguments in response.

*First*, defendants argue that plaintiff failed to plead a clear and unambiguous promise. Not so. "Plaintiff was informed by the Loan Modification processor that the 'clock' would stop during the loan modification process and yet the foreclosure 'clock' did not stop" (First Amd. Compl. ¶ 38). Plaintiff sufficiently pled the existence of a clear and unambiguous promise from defendants to halt the foreclosure process.

*Second*, defendants argue that this claim for relief is barred by the contracts between the parties. Defendants contend "promissory estoppel is an equitable action only available as a substitute for a breach of contract claim — where there is a failure of consideration and hence no contract" (Br. 13). Defendants are correct in their assertions, but this only limits the application of promissory estoppel to those terms negotiated in the contract. *See Youngman v. Nev. Irr. Dist.*, 70 Cal. 2d 240, 249–51 (1969). Plaintiff's assertions regarding the loan modification negotiations do not fall under the loan agreement, deed of trust, or promissory note;

11

therefore, they cannot be barred by the contract.  Plaintiff pled sufficient facts to state a plausible claim for promissory estoppel.  Defendants' motion to dismiss plaintiff's fifth claim is therefore **DENIED**.

### G. Eighth Claim: Unjust Enrichment.

Plaintiff also sought restitution for unjust enrichment because "Defendants received and continue to receive benefits of profits and material gains by unjustly retaining profits, income and ill-gotten gains at the expense of Plaintiff who acted in detrimental reliance upon the Defendants' false assurances, representations and promises" (First Amd. Compl. ¶ 86). As defendants point out, unjust enrichment is "not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies.  It is synonymous with restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).  Accordingly, a claim for unjust enrichment is properly pled as a claim for a contract implied-in-law.  It "does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996). California recognizes an exception to this rule: "Restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride*, 123 Cal. App. 4th at 388.

Plaintiff failed to state a plausible claim for unjust enrichment.  *First*, any allegations of unjust enrichment based in fraud do not state a plausible claim for relief as discussed above. *Second*, plaintiff failed to plead facts demonstrating any other benefit she conferred upon defendants outside of payments she made pursuant to the deed of trust and promissory note. Nor has plaintiff alleged that the contracts between the parties are unenforceable or ineffective for some reason other than fraud.  Due to these deficiencies, defendants' motion to dismiss plaintiff's claim for unjust enrichment is **GRANTED**.

### H. Ninth Claim: Quiet Title.

In her ninth claim, plaintiff requested "a determination of her fee simple title clear of all encumbrances by any Defendant as of the date this Complaint is filed" (First Amd. Compl. ¶ 90). The purpose of a quiet title action is to establish title against adverse claims to real property or

any other interest therein. "[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee." *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). "The cloud upon [one's] title persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974). Nowhere in the complaint did plaintiff state that she is willing or able to make a tender of her debt. Plaintiff failed to adequately allege compliance with this requirement, which is fatal to her claim to quiet title.

Plaintiff mistakenly relies on California Code of Civil Procedure Section 431.70 to contend that she does not have to make a tender to Wachovia (Opp. 4–5, 12). Section 431.70 provides, in pertinent part:

> Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations.

This statute does not apply. The statute allows for a set-off to be *asserted as a defense in the answer to a suit commenced by another party*. Here, plaintiff is the party who commenced the suit. Defendants never asserted that they were entitled to a set-off, and defendants have not asserted a counter-claim for damages. Defendants' motion to dismiss plaintiff's claim to quiet title is accordingly **GRANTED**.

### I.     Tenth Claim:  California Rosenthal Act.

Plaintiff alleged that defendants violated the California Rosenthal Fair Debt Collections Practices Act "in that they threaten to take actions, including but not limited to foreclosure, that are not permitted by law, have used false, deceptive, or misleading representations or means in an attempt to collect a debt" (First Amd. Compl. ¶ 93). In order to be found liable under the Rosenthal Act, a defendant must be a debt collector. A "debt collector" is defined as any person who "in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." CAL. CIV. CODE § 1788.2(c). A debt collection is defined as "any act or practice in connection with the collection of consumer debts." *Id.* § 1788.2(b). Plaintiff must also show that the debt arises out of "a transaction between a natural person and

13

another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." *Id.* § 1788.2(e).

Plaintiff did not specifically allege that defendants were debt collectors, but she did state that they used deceptive means including falsifying documents and failing to credit payments in their attempts to collect a debt (First Amd. Compl. ¶¶ 34, 39, 93). She also pled sufficient facts to demonstrate she was part of a transaction wherein property was acquired on credit for family or household purposes. Accordingly, plaintiff pled sufficient facts to state a claim for violation of the Rosenthal Act.

Defendants contend that the Act does not apply because a non-judicial foreclosure is not a debt collection. Even assuming this to be true, plaintiff made allegations that fall outside of the foreclosure itself, such as falsifying documents and failing to credit payments made to her debt. Thus, plaintiff pled sufficient facts to state a claim for relief under the Rosenthal Act, and defendants' motion to dismiss this claim is **DENIED**.

### J. Eleventh Claim: Declaratory Relief.

Plaintiff's operative complaint sought declaratory relief. This claim is actually a request for remedy — to weigh it, the court must look to its underlying claims. *See Boeing Co. v. Cascades Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000). Until plaintiff's claims are finally determined, it is impossible for this order to say that declaratory relief will not be in order. Accordingly, defendants' motion to dismiss this claim is **DENIED**.

### K. Twelfth Claim: Rescission/Cancellation of Void Instrument.

In her twelfth claim, plaintiff asserted "her demand for rescissionary damages on the grounds of fraudulent misrepresentations, deceit and mistake by Defendants." She sought cancellation of the loan agreement and the deed of trust (First Amd. Compl. ¶¶ 107, 109). This claim fails for two reasons.

*First*, California requires a party seeking rescission to "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise." CAL. CIV. CODE § 1691(b). As discussed

14

above, plaintiff has not alleged that she is willing or able to tender any amount to defendants. This order already found plaintiff's arguments against tender without merit.

*Second*, plaintiff's underlying reason for rescission of the contract is fraud. Her claims for relief based in fraud were not sufficiently pled in the complaint. Plaintiff's fraud claims, as discussed above, do not survive this order and cannot form the basis for a rescission claim. Defendants' motion to dismiss plaintiff's claim for rescission is accordingly **GRANTED**.

### L.     Thirteenth Claim: Accounting.

Plaintiff also sought "an accurate accounting of the amount she owes the true owners of the loan, including the payments that Plaintiff already made" (First Amd. Compl. ¶ 112). An accounting can be either a legal remedy or an equitable claim. Moreover, a request for a legal accounting must be tethered to an actionable claim or claims. In order to state a claim, a complaint must allege the existence of a relationship or other circumstances appropriate to the remedy and a balance due from the defendant that can only be ascertained through an accounting. *See Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934). Plaintiff met this burden.

Defendants assert that there is no fiduciary relationship between a lender and a borrower, and thus plaintiff fails to plead the requisite relationship. Not so. A fiduciary relationship between the parties is not required. "All that is required is that some relationship exists that requires an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). Plaintiff sufficiently pled the existence of a relationship between her and defendants, as well as the potential need for an accounting of the funds exchanged by the parties and possibly owed to plaintiff. Accordingly, defendants' motion to dismiss plaintiff's claim for accounting is **DENIED**.

### M.     Fourteenth Claim: Violation of California Civil Code Section 2934a, Subsections (d) and (e).

Finally, Plaintiff alleged that defendants violated California Civil Code Section 2934a(d) and (e). In her complaint, plaintiff asserted this claim against all defendants, but in her reply, she specifies, "[d]efendant NDEX initiated a non-judicial foreclosure prior to being properly substituted in as trustee" (Reply Br. 14). This distinction is immaterial because she failed to allege sufficient facts to state a claim under this sections against any of the moving defendants.

15

Subsection (d) states, "[a] trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents." Subsection (e) adds:

> Notwithstanding any provision of this section or any provision in any deed of trust, unless a new notice of sale containing the name, street address, and telephone number of the substituted trustee is given pursuant to Section 2924f after execution of the substitution, any sale conducted by the substituted trustee shall be void.

The notice of default was recorded by NDEX in April 2010 (RJN Exh. F). A little over a month later, a substitution of trustee was recorded on May 25, effectively substituting NDEX in for Golden West as trustee (RJN Exh. G). On July 15, the notice of trustee's sale was recorded by NDEX (RJN Exh. H). Plaintiff asserts that the notice of default was not properly recorded because NDEX had not yet been substituted in as trustee. Not so. As defendants argue, Section 2934a, subsection (c) allows the notice of default to be recorded before the substitution of trustee. Subsection (c) states:

> If the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries or their authorized agents shall cause a copy of the substitution to be mailed, prior to, or concurrently with, the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision.

Defendants effected the substitution after the notice of default but prior to the recording of the notice of sale. Because plaintiff failed to allege sufficient facts to state a claim for violation of Section 2934a, this order does not reach defendants' alternative arguments for dismissal. Accordingly, defendants' motion to dismiss plaintiff's claim for violation of Section 2934a is **GRANTED**.

### N. Judicial Estoppel.

Defendants contend that all fourteen of plaintiff's claims are barred by the doctrine of judicial estoppel. They assert that the doctrine prohibits plaintiff from bringing this action because she did not initially declare her right to the claim as an asset of her bankruptcy estate.

16

> Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. [The Ninth Circuit] invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts.

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

A district court may consider three factors to inform its decision whether to apply the doctrine: (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the court in the earlier lawsuit accepted the party's initial position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 782–83. "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statement to identify the cause of action as a contingent asset." *Id.* at 784. Our court of appeals has adopted the majority rule that judicial estoppel applies in subsequent litigation only if the court in the prior litigation adopted the inconsistent assertion. *See Interstate Fire & Cas. Co. v. Underwriters at Lloyd's*, 139 F.3d 1234, 1239 (9th Cir. 1998). Moreover, judicial estoppel is not applicable if the party's earlier position was based on inadvertence or mistake. *See Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997).

Here, defendants contend that plaintiff has asserted inconsistent positions. She failed to list her claims against Wachovia Mortgage on her bankruptcy schedules in August 2010, was discharged in November 2010, and then sued Wachovia Mortgage in December 2010 (RJN Exh. K). Plaintiff does not dispute this. Instead plaintiff claims in her reply that she was "unaware of the need to claim this future litigation" when she filed for bankruptcy in August 2010, and "the true terms of the loan were 'masked' by defendants' acts until a professional loan audit on June 16, 2011" (Reply Br. 5).

Plaintiff filed this action in December 2010, so she must have known of this lawsuit before the June 2011 "professional loan audit." It is not clear, however, when in 2010 plaintiff

17

became aware that she would file this action. She states in her reply that she was "unaware" of the need to claim this litigation in August 2010. Accordingly, she pled sufficient facts to make it plausible that her failure to disclose this suit was inadvertent or a mistake. This order will not apply judicial estoppel to bar plaintiff's claims at this stage.

### 2. MOTION TO STRIKE.

Defendants move to strike portions of the amended complaint. A motion to strike an affirmative defense is brought pursuant to FRCP 12(f), under which a court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendants request that this order strike paragraphs 46, 53, 81, and 84, which all relate to punitive damages allegations in the complaint. This order only considers this motion as it relates to paragraph 53 because paragraphs 46, 81, and 84 are parts of plaintiff's first, sixth, and seventh claims, which are dismissed by this order. The motion to strike is accordingly **DENIED AS MOOT** as to paragraphs 46, 81, and 84.

Referring to plaintiff's second claim for breach of the covenant of good faith and fair dealing, paragraph 53 states, "Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior." Punitive damages are allowed where "it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." CAL. CIV. CODE § 3294(a). Moreover, because plaintiff filed claims against the corporations that employ the representatives with whom plaintiff interacted, she must also satisfy Section 3294, subsection (b). Subsection (b) states:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

18

Plaintiff asserted nothing more than conclusory statements alleging any "officer, director, or managing agent of the corporation" consciously disregarded, authorized, or ratified any alleged wrongful conduct. Plaintiff stated that the situation was compounded by defendant World Savings' failure to oversee employees. This is not enough to demonstrate advance knowledge of employee unfitness and a conscious disregard for the rights of others. Plaintiff further alleged that defendants were "complicit in a scheme," but she provided no support for this statement (First Amd. Compl. ¶ 31). Finally, she attempted to show authorization by asserting that all allegations in her complaint against corporations "shall be deemed to mean and include an allegation that the corporation . . . acted or omitted to act through its authorized officers, directors . . . [and] that the act or omission was authorized by corporate managerial officers" (*id.* at ¶ 14). This conclusory statement is not enough. Plaintiff's punitive damages allegations in paragraph 53 are hereby **STRICKEN**.

\*             \*             \*

This order notes plaintiff's counsel did not file a timely response to the instant motion to dismiss. In addition, the August 17 order to show cause instructed plaintiff to respond to the OSC and not to file a late opposition. Plaintiff filed her opposition late and did not file a response to the OSC. This order addresses the merits of the motion in the interest of justice, but plaintiff should take care and heed future orders and case management deadlines.

**CONCLUSION**

For the foregoing reasons, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims for (1) breach of the covenant of good faith and fair dealing, (2) violation of Business and Professions Code Section 17200, (3) promissory estoppel, (4) violation of the California Rosenthal Act, (5) declaratory relief, and (6) accounting, remain asserted against the moving defendants in this action. Defendants' motion to strike, filed concurrently, is **GRANTED IN PART AND DENIED AS MOOT IN PART**. Paragraphs 46, 53, 81, and 84 of the operative complaint are therefore **STRICKEN**.

As to any claims stricken or dismissed above, plaintiff may seek leave to amend the complaint and will have **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion,

19

noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

This order also sets a case management conference for **NOVEMBER 3, 2011, AT 3 P.M.** The parties should submit a joint case management conference statement by **OCTOBER 27, 2011**.

**IT IS SO ORDERED.**

Dated: October 12, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE